J. T. Klaus Mulvane Bond Counsel 2000 Epic Center 301 North Main Wichita, Kansas 67202-1272
Dear Mr. Klaus:
As bond counsel for the City of Mulvane you ask our opinion on whether U.S.D. No. 263 may enter into a joint venture with the City of Mulvane to construct and equip a school building under K.S.A. 12-1769, hold an election and issue general obligation bonds for the joint project without being subject to the fourteen percent debt limitation in K.S.A. 72-6761(a) and without applying to the State Board of Education for approval to exceed the fourteen percent limitation.
As background, you inform us that Mulvane and U.S.D. 263 jointly propose to enter into an agreement for constructing, equipping, managing and financing a community building with various facilities intended to be used by members of the community. The estimated cost of the project is $5,900,000. U.S.D. 263 is a "school district" as it is defined in K.S.A. 12-1769. The school district intends to submit the question of bond financing for the community building to the qualified electors of the district. The district will issue general obligation bonds for joint financing if the votes are in favor of the bond issue (assuming the City's election also carries). The aggregate amount of previous bonds issued by U.S.D. 263 exceeds the fourteen percent limit set by K.S.A 72-6761(a) for improvements made for "school district purposes." Your question is whether this limit also applies to the proposed community building bonds.
K.S.A. 12-1769 permits a city and the surrounding school district to jointly acquire property and construct a community building upon such terms as the two governing bodies agree. Community buildings are to be jointly managed by the two entities, and a written agreement shall provide the purposes for which the buildings will be used. Each governing body may issue general obligation bonds to finance site acquisition, construction, furnishing and equipping of community buildings only after the city and school district each have gained voter approval. General bond law governs the issuance, registration, sale and terms of such bonds. Finally, "[a]ll bonds issued under the authority conferred by this act shall `not be subject to or within anybonded debt limitation provided by any other law of this state.'"
K.S.A. 72-6761 sets out the procedures and prerequisites school boards must follow when issuing bonds for "school district purposes." The aggregate amount of bonds "of a board outstanding at any time, exclusive of bonds specifically exempted fromstatutory debt limitations, shall be limited to 14% of the assessed valuation of taxable tangible property within the school district" except as modified by article 23 of chapter 75.[1]
K.S.A. 75-2315 et seq. provide school boards with the steps necessary to apply for and receive approval from the State Board of Education to "vote bonds" for "school district purposes" in excess of the amount the district is otherwise authorized to issue.
The 1999 Legislature added a further restriction to use of school district bonds in the Omnibus Appropriations Bill.[2]
"Expenditures made by the department of education from the school district capital improvements fund as provided for in section 57(b) of 1999 Senate Bill No. 325 shall only be made for the payment of general obligation bonds approved by the voters under the authority of K.S.A. 72-6761 and amendments thereto." Section 57(b) of 1999 Senate Bill No. 325 makes and limits appropriations to the Department of Education from special revenue funds.
We find the following basic rules of statutory construction to be determinative, as restated and reapplied in Davis v. City ofLeawood, 257 Kan. 512, 527 (1995). "The fundamental rule of statutory construction is that the intent of the legislature governs . . . [t]he intent of the legislature is to be derived in the first place from the words used . . . [w]hen a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be . . . [and] words in common usage should be given their natural and ordinary meaning (citations omitted)." Id. Two other helpful tenets are that effect must be given to all provisions within an act, and where two provisions of different acts affect the same issue the different provisions must be reconciled if possible.[3]
The two statutes at issue are easily reconciled by giving effect to the ordinary meaning of their respective terms. K.S.A. 12-1769
exempts community building bonds issued by qualified school districts from any debt limitations set out by other laws. Consistently, K.S.A. 72-6761 et seq. refer only to projects constructed for school district purposes (a community building may be built for any purpose to which the city and district agree) and excludes from its fourteen percent debt limit bonds exempted under other laws. The question of whether U.S.D. 263 must apply to the State Board of Education for additional bond authority becomes moot because, by plain statutory terms, the community building bonds are not subject to and are exempted from the fourteen percent debt limit.
It is therefore our opinion that U.S.D. 263 may enter into a joint agreement with the City of Mulvane to construct and manage a community building and, following a successful election, may issue bonds under K.S.A. 12-1769, and that such bonds are not subject to debt limitations imposed by chapter 72, article 67. We note that we forwarded your opinion request and legal reasoning to State Board of Education personnel for their views. They agree with your arguments, which correspond with the foregoing analysis and conclusion, but with the following funding caveat: under 1999 H.B. 2489, § 7, expenditures from the school district capital improvements fund may not be used to repay general obligation bonds issued to finance projects used for non-school district purposes.
Very truly yours,
 CARLA J. STOVALL Attorney General
 Nancy L. Ulrich Assistant Attorney General
CJS:JLM:NLU:jm
[1] K.S.A. 72-6761(a).
[2] 1999 H.B. 2489, § 7(i).
[3] United Steelworker of America v. Kansas Comm'n on CivilRights, 253 Kan. 327, 333, Syl. 1 (1993).